FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA 2018 JUN 11 PM 3: 54



LLB CONVENIENCE & GAS, Inc., a Florida corporation,

    Plaintiff,

vs.

Case No.: 6:18-cv-914-ORL-40TBS

SOUTHEAST PETRO DISTRIBUTORS, Inc.,

    Defendant.
_____/

## COMPLAINT

Plaintiff, LLB Convenience & Gas, Inc. ("LLB" or "Plaintiff") by and through its undersigned counsel, hereby sues Defendant, Southeast Petro, Inc. ("Southeast Petro" or "Defendant") and respectfully states as follows:

### Parties, Jurisdiction, and Venue

1. Plaintiff LLB is a Florida for profit corporation with its principal place of business located at 8788 Vineland Avenue, Orlando, Florida 32821.

2. Defendant Southeast Petro is a Florida for profit corporation with its principal place of business located at 402 High Point Drive, Cocoa, Florida 32926.

3. This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 2805(a).

4. This court has personal jurisdiction over Defendant because it maintains operations in the Middle District of Florida and conducts business in the Middle District of Florida.

5. Venue is proper in the Middle District, pursuant to 28 U.S.C. § 1391 because Defendant resides in the Middle District of Florida and a substantial part of the events or omissions giving rise to the claim occurred in the Middle District of Florida.

## Factual Background

6. This dispute arises out of a contract between Plaintiff and Defendant for the supply of Shell-branded motor fuel to a gas station located at 8788 Vineland Avenue, Orlando, Florida 32821 that is owned and operated by Plaintiff, and located at 8788 Vineland Avenue, Orlando, FL 32821 (the "Vineland Station").

7. Plaintiff and Defendant entered into a Dealer Supply Agreement, dated December 12, 2007 (the "DSA"). A true and correct copy of the DSA is attached as "Exhibit A" and is incorporated by reference in its entirety.

8. The initial term of the DSA is for ten years. The term commenced on July 19, 2012, and ends on July 19, 2022. *See* DSA, page 1.

9. The DSA obligates Defendant to supply motor fuel to the Vineland Station and licenses the use of the Shell trademark at the Vineland Station. *See* Ex. 1 to DSA.

10. With respect to the DSA, Defendant is a "franchisor" within the meaning of the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* (the "PMPA") because it is a distributor that authorizes, under a franchise, a retailer to use a trademark in connection with the sale of motor fuel. 15 U.S.C. § 2801(3). *See* Ex. 1 to DSA.

11. With respect to the DSA, Plaintiff is a "franchisee" within the meaning of the PMPA because it is a retailer that is authorized, under a franchise, to use a trademark in connection with the sale of motor fuel. 15 U.S.C. § 2801(4). *See* Ex. 1 to DSA.

4835-3245-3478.2

12. The relationship between Plaintiff and Defendant, pursuant to the DSA, is a "franchise" within the meaning of the PMPA because it is a contract under which a distributor authorizes a retailer to use, in connection with the sale of motor fuel, a trademark which is owned or controlled by a refiner which supplies motor fuel to the distributor which authorizes or permits such use. Additionally, it is a contract pertaining to the supply of motor fuel which is to be sold under a trademark owned or controlled by a refiner. 15 U.S.C. §§ 2801(1)(A)(iv) and (1)(B)(ii). *See* Ex. 1 to DSA.

13. The supply relationship established by the DSA is a "franchise relationship" within the meaning of the PMPA because it deals with the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise. 15 U.S.C. § 2801(2). *See* Ex. 1 to DSA.

14. The PMPA requires that a franchisor, such as Defendant, provide notification of termination to a franchisee, such as Plaintiff. The franchisor must ordinarily provide at least 90 days' notice, or if 90 days' notice is not reasonable, it must provide notice of termination on the earliest date on which the furnishing of such notification is reasonably practicable. Such notice must contain a statement of the intention to terminate the franchise, together with the reasons therefor; the date on which such termination or nonrenewal takes effect; and a simple and concise summary of the provisions of the PMPA, including a statement of the respective responsibilities of, and the remedies and relief available to, any franchisor and franchisee under the PMPA, pursuant to 15 U.S.C. § 2804(d). 15 U.S.C. §§ 2802(b), 2804.

15. Defendant receives the fuel which it supplies to Plaintiff from Motiva Enterprises, LLC ("Motiva"), pursuant to the Wholesale Marketer Agreement ("WMA") dated January 1, 2017.[1]

16. On or about January 31, 2018, Motiva sent to Defendant a Notice of Failure to Maintain Brand Standards under the WMA ("Motiva Notice"), based, in part, on alleged customer complaints about the Vineland Station. Defendant forwarded the Motiva Notice to Plaintiff via email on or about February 14, 2018. A true and correct copy of the Motiva Notice is attached as "Exhibit B" and is incorporated by reference in its entirety.

17. The Motiva Notice alleges violations of several provisions of the WMA, including Section 7(a), which requires Defendant to uphold Motiva's brand standards, including promptly and courteously responding to all customer complaints, and taking immediate action to satisfactorily resolve each customer complaint. The Motiva Notice also alleges that the monthly volume of retail gasoline sales at the Vineland Station is below the Orange County average.

18. Plaintiff has at all times maintained the Vineland Station to a remarkably high standard and has repeatedly offered to demonstrate to Defendant and Motiva, at any time, that it maintains the service station in accordance with all Shell branding requirements and, in fact, significantly exceeds those requirements.

19. The only customer complaints which Plaintiff has received relate to the price of its fuel products. In each of these cases, Plaintiff has resolved the matter to the full satisfaction of the customer, as required by the DSA and the relevant Brand Standards. In many cases,

---

[1] Plaintiff is not in possession of a copy of the WMA, and as such, cannot attach it to this Complaint.

4835-3245-3478.2

Plaintiff has issued a refund to the customer for the difference between the price it was charged at the Vineland Station and the spot price of fuel on the day of the purchase.

20. Defendant, is and at all relevant times was, aware of this policy and has never objected to Plaintiff's handling of pricing complaints.

21. Plaintiff notified both Defendant and Motiva of its compliance with the DSA and the relevant Brand Standards, and demanded proof of the customer complaints alleged by Motiva. To date, Plaintiff has not received any evidence of these complaints.

22. The DSA does not require Plaintiff to meet or exceed the Orange County average volume of sales. Although there is a minimum volume sales goal of motor fuel in the DSA, this requirement is in no way related to average volume in Orange County. Further, the DSA provides that if the minimum volume monthly goal is not met, the DSA will automatically extend until the contract minimum volume has been purchased from Defendant.

23. Additionally, Plaintiff has never met the minimum monthly volume goal since inception of the Vineland Station in 2008, regardless of its pricing strategy. Prior to the Motiva Notice, Defendant has never complained about the volume of sales at the Vineland Station. In fact, Defendant has affirmatively represented to Plaintiff that it would not enforce the sales volume requirements set forth in the DSA.

24. Rather, the allegations regarding customer complaints and volume of sales are mere pretenses to improperly direct or attempt to direct the retail pricing at the Vineland Station. The directing of retail pricing by the Defendant or Motiva is a direct violation of state and federal laws. *See, e.g.*, 526.307, Fla. Stat.

25. On or about May 8, 2018, Defendant sent Plaintiff a notice that it would be removed from the Shell network and required to debrand (the "Southeast Petro Notice"). A true

4835-3245-3478.2

and correct copy of the Southeast Petro Notice is attached as "Exhibit C" and is incorporated by reference in its entirety.

26. Subsequent to the Southeast Petro Notice, Defendant has stated to Plaintiff that it will terminate the supply of Shell-branded motor fuel to the Vineland Station.

27. As a result of this unlawful conduct on the part of Defendant, the Vineland Station faces irreparable harm to its reputation and customer relationships.

28. Defendant has sought to terminate, and in fact has terminated or constructively terminated, the DSA without complying with the notice requirements of the PMPA, 15 U.S.C. § 2804. Specifically, the Southeast Petro Notice did not provide 90 days' notice, state sufficient grounds for termination, or contain a summary statement, as required by 15 U.S.C. 2804(d). The Defendant has not (nor can it) identify any basis for asserting that an exception to the 90 day notice requirement for debranding exists in this case.

29. Defendant has sought to terminate, and in fact has terminated or constructively terminated, the DSA without the good cause required by the PMPA. 15 U.S.C. § 2802(b).

30. Defendant has additionally terminated or constructively terminated the DSA by stating it will not supply Shell-branded motor fuel to the Vineland Station and demanding that Plaintiff debrand the station.

31. The Vineland Station cannot survive if it does not have any gas to sell. The Vineland Station enjoys the patronage of many customers. If the Vineland Station does not have gasoline or diesel fuel due to Defendant's conduct, Plaintiff's customers will take their business elsewhere.

4835-3245-3478.2

32. As a result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages and faces irreparable harm to its reputation and customer relationships.

33. All conditions precedent to the maintenance of this action have been performed, have been waived, or have occurred.

## COUNT ONE – VIOLATION OF THE PMPA

34. Plaintiff hereby incorporates by reference paragraphs 1 to 33 as if fully set forth herein.

35. The supply of Shell-branded motor fuel to the Vineland Station pursuant to the DSA is an intrinsic part of the "franchise" and "franchise relationship" covered by the PMPA. 15 U.S.C. § 2801.

36. The use of the Shell trademark is an intrinsic part of the "franchise" and "franchise relationship" covered by the PMPA. 15 U.S.C. § 2801.

37. In violation of the DSA, Defendant has stated that it will cease selling Shell-branded motor fuel to the Vineland Station.

38. In violation of the DSA, Defendant has demanded that Plaintiff debrand the Shell Station and terminate its use of the Shell trademark.

39. Defendant's demands amount to a termination of the franchise and franchise agreement between Plaintiff and Defendant.

40. Defendant's Notice to Debrand did not comply with the PMPA notice requirements because, among other things, it did not state sufficient grounds for termination, did not provide 90 days' notice, and did not include a summary statement, as required by 15 U.S.C. § 2804. Rather, it merely attaches and references the Motiva Notice, which alleges grounds for

terminating the WMA with Southeast Petro, but does not even mention the DSA between Southeast Petro and LLB.

41. Defendant's violation of 15 U.S.C. § 2802 was in willful disregard of the PMPA and the rights of Plaintiff as franchisee.

42. As a result of Defendant's violations, Plaintiff is entitled to a preliminary injunction, actual damages, reasonable attorneys' fees, pursuant to Section 27 of the DSA and Section 2805 of the PMPA, and other equitable relief to be determined by this Court.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter a temporary restraining order and/or a preliminary injunction pursuant to the PMPA, 15 U.S.C. § 2805, enforcing the DSA and requiring Defendant to supply Shell-branded motor fuel to Plaintiff for use at the Vineland Station pursuant to the DSA.

B. Enter preliminary injunction pursuant to Fed. R. Civ. P. 65, enforcing the DSA and requiring Defendant to supply Shell-branded motor fuel to Plaintiff for use at the Vineland Station pursuant to the DSA.

C. Award Plaintiff compensatory damages, pursuant to 15 U.S.C. 2805(d), in an amount to be determined;

D. Award Plaintiff reasonable attorneys' fees and costs pursuant to Section 27 of the DSA, 15 U.S.C. § 2805 and other applicable law; and

E. Grant such other and further relief as this Court deems just and proper under the circumstances.

## COUNT TWO – ANTICIPATORY REPUDIATION

43. Plaintiff hereby incorporates by reference paragraphs 1 to 33 as if fully set forth herein.

44. Plaintiff has a signed, valid, fuel supply contract—the DSA—with Defendant.

45. The DSA is a contract within the Uniform Commercial Code, because it is primarily for the sale of goods, specifically motor fuel.

46. Pursuant to Section 5 of the DSA, Defendant is obligated to provide Plaintiff with "such quantities of Company's petroleum and other products as may be necessary to meet the customer demand for Company products at the Facility." *See* DSA, Section 5.

47. Pursuant to Exhibit 1 of the DSA, Plaintiff shall enjoy the use of Shell's brands. *See* Ex.1 to DSA.

48. On or about May 8, 2018, Defendant clearly and positively indicated that it would not perform its obligations under the DSA, including by refusing to supply Plaintiff with Shell-branded motor fuel and by demanding Plaintiff to debrand the Vineland Station.

49. At the time of Defendant's repudiation, and at all relevant times, Plaintiff was willing and able to pay for Shell-branded motor fuel and to perform all other obligations under the DSA.

50. Plaintiff cannot operate without the required motor fuel to meet its customers' demands. If Defendant does not perform under the DSA, Plaintiff will not be able to supply motor fuel to its customer who would otherwise purchase fuel at the Vineland Station.

51. If Plaintiff is forced to debrand, it will lose further sales from the loss of customers loyal to the Shell brand.

52. Defendant's conduct amounts to anticipatory repudiation of the DSA, pursuant to 672.610, Fla. Stat.

4835-3245-3478.2

53. As a result of Defendant's anticipatory repudiation of the DSA, Plaintiff will be injured and is entitled to damages in an amount to proven at trial. 672.610, Fla. Stat. and 672.711, Fla. Stat.

WHEREFORE, Plaintiff seeks judgment in its favor and against Defendant for breach of the DSA, awarding damages, lost profits, costs, interest, and attorney's fees, pursuant to Section 27 of the DSA, together with any such other and further relief deemed appropriate by the Court.

/s/ Kevin A. Reck
Kevin A. Reck
Florida Bar No. 0505552
Primary: kreck@foley.com
Secondary: bshelley@foley.com
Virginia R. Beeson
Florida Bar No. 1003406
Primary: vbeeson@foley.com
Foley & Lardner LLP
111 North Orange Avenue, Suite 1800
Orlando, FL 32801-2386
Telephone: 407.423.7656
Facsimile: 407.648.1743
Attorneys for Plaintiff

4835-3245-3478.2