UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LLB CONVENIENCE & GAS, INC.,

    Plaintiff,

v.                                            Case No: 6:18-cv-914-Orl-40TBS

SOUTHEAST PETRO DISTRIBUTORS, INC.,

    Defendant.

## ORDER

This case comes before the Court without a hearing on Plaintiff's Motion to Compel Production and More Complete Responses to Plaintiff's First Set of Discovery Requests (Doc. 38). Defendant has failed to respond to the motion and the time within to do so has expired. "When a party fails to respond, that is an indication that the motion is unopposed." Foster v. Coca-Cola Co., No. 6:14-cv-2102-Orl-40TBS, 2015 WL 3486008, at *1 (M.D. Fla. June 2, 2015) (citing Jones v. Bank of America, N.A., 564 F. App'x 432, 434 (11th Cir. 2014)); Strykul v. PRG Parking Orlando, L.L.C., Case No. 6:14-cv-211-Orl-31GJK, 2015 WL 789199, at *2 (M.D. Fla. Feb. 24, 2015). Based upon Defendant's failure to respond the Court proceeds on the basis that, apart from the objections it lodged when it responded to Plaintiff's discovery, Defendant does not oppose this motion.

## Background

Plaintiff LLB Convenience & Gas, Inc. owns and operates a Shell branded gas station located on Vineland Road in Orlando, Florida (Doc. 3, ¶ 6). It receives Shell branded motor fuel and a license to use the Shell trademark from Defendant Southeast Petro Distributors, Inc., pursuant to a Dealer Supply Agreement ("DSA") (Id., ¶¶ 6-7).

Defendant in turn, gets the motor fuel from non-party Motiva Enterprises, Inc., pursuant to a Wholesale Marketer Agreement ("WMA") (Id., ¶ 15).

In January 2018, Motiva sent Defendant a Notice of Failure to Maintain Brand Standards under the WMA (Id., ¶ 16). The notice was based in part, on customer complaints about Plaintiff's gas station, and in part, on allegations that the monthly volume of retail sales at Plaintiff's station was below the Orange County, Florida average (Id., ¶¶ 16-17). Defendant forwarded the notice to Plaintiff (Id., ¶ 16). Plaintiff disputes the allegations contained in the notice and claims that they are a pretense to attempt to direct the retail pricing at its gas station[1] (Id., ¶¶ 18, 24).

In May 2018 Defendant sent Plaintiff a notice that it was going to be removed from the Shell network and that Plaintiff must de-brand its gas station (Id., ¶ 25). After this notice was sent, Defendant told plaintiff it was going to stop supplying Shell branded motor fuel to Plaintiff's station (Id., ¶ 26). Plaintiff alleges in its complaint that Defendant's actions violate the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* and constitute an anticipatory repudiation of the DSA (Doc. 3).

The Case Management and Scheduling Order governing this case established August 1, 2019 as the discovery deadline (Doc. 36). On October 10, 2018 Plaintiff served its first requests for production and first set of interrogatories on Defendant (Doc. 38, ¶ 8). Plaintiff is not satisfied with Defendant's responses and is asking this Court to compel better responses certain requests and interrogatories.

## Discussion

The Federal Rules of Civil Procedure "strongly favor full discovery whenever

---

[1] According to Defendant, Plaintiff charges more for motor fuel than any other gas station in Orlando, and possibly the state of Florida (Doc. 38 at 22). Apparently, this results in customer complaints (Id.).

possible." Farnsworth v. Proctor & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985). Rule 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351(1978). A discovery request "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296 (E.D. Pa. 1980); see also Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556 (7th Cir. 1984) (If court is in doubt concerning the relevancy of requested discovery the discovery should be permitted.).

Interrogatories may relate to any matter that can be inquired into under Rule 26(b). Each interrogatory should be answered "separately and fully in writing under oath." FED. R. CIV. P. 33(b)(3). The grounds for objecting to an interrogatory must be stated with specificity." FED. R. CIV. P. 33(b)(4). Requests for production "must describe with reasonable particularity each item or category of items to be inspected." FED. R. CIV. P. 34(b)(1)(A). Objections to requests for production must: (1) "state with specificity the grounds for objecting to the request, including the reasons;" (2) "state whether any responsive materials are being withheld on the basis of that objection;" and (3) "[a]n objection to part of a request must specify the part and permit inspection of the rest." Rule 34(b)(2).

The rules leave no place for generalized, non-specific, boilerplate objections. Objections to discovery must be "plain enough and specific enough so that the court can understand in what way the [discovery is] alleged to be objectionable." Panola Land Buyers Assoc. v. Shuman, 762 F.2d 1550, 1559 (11th Cir. 1985) (quoting Davis v.

Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981)). "Objections which state that a discovery request is 'vague, overly broad, or unduly burdensome' are, by themselves, meaningless, and are deemed without merit …." Siddiq v. Saudi Arabian Airlines Corp., No. 6:11-cv-69-Orl-19GJK, 2011 WL 6936485, at *3 (M.D. Fla. Dec. 7, 2011) (quoting Milinazzo v. State Farm Ins. Co., 247 F.R.D. 691, 695 (S.D. Fla. 2007)). As the court in Liguria Foods, Inc. v. Griffith Laboratories, Inc., 320 F.R.D. 168, 184 (N.D. Iowa 2017) observed, "'[t]he key requirement in both Rules 33 and 34 is that objections require 'specificity.'" "'[G]eneralized objections are inadequate and tantamount to not making any objection at all.'" Id. at 185 (quoting Jarvey, Boilerplate Discovery Objections, 61 Drake L. Rev. at 916).

If the Court grants a motion to compel it must direct the party whose conduct necessitated the motion, "or the attorney advising that conduct, or both," to compensate the movant for "reasonable expenses incurred in making the motion, including attorney's fees," except in certain limited circumstances. FED. R. CIV. P. 37(a)(5)(A). The recipient has thirty (30) days within which to respond to the requested discovery. FED. R. CIV. P. 33(b)(2), 34(b)(2)(A).

For the requests to produce that are the subject of this motion Defendant has provided one or more of the following responses:

(1) "The universe of billings and operational interaction makes it burdensome to provide 'all' documents as broadly sought and defined by [Plaintiff] but [Defendant] will make available for inspection and copying its file on [Plaintiff] and is preparing an electronic soft copy of all emails between it and [Plaintiff] and [Plaintiff's] known representatives as well as any emails or written communication between [Defendant] and [Motiva] which it will provide to [Defendant's] counsel." (Doc. 38-4 at 3).

(2) "[Plaintiff] is in possession of emails which [Plaintiff] receives providing it with

customer complaints from Motiva about its operations at the Vineland Station and [Defendant] is usually copied with those complaints and routinely copies and sends [Plaintiff] additional copies of such complaints. [Defendant] will therefore not produce additional copies of those materials, as they are already in the possession of [Plaintiff]. Similarly, [Defendant] refers [Plaintiff] to, but will not produce duplicate additional copies of the attachments to pleadings or the Exhibits provided to [Plaintiff] or by [Plaintiff] at the hearing previously conducted in this matter." (Id.).

(3) "Branded products and branding materials bearing the Shell trademark are made available to [Plaintiff] pursuant to the DSA and subject to the MWA." (Id., at 4).

(4) "See Attachment B and above response to RFP #1 which would include anything sought in this request. [Plaintiff] is referred to the Exhibits to the hearing." (Id.).

(5) "See above response to RFP #1 which would include anything sought in this request. [Plaintiff] is referred to the Exhibits to the hearing. Any additional materials would be privileged materials between [Defendant's] counsel and Motiva's counsel which are not produced as they are protected by both attorney client privilege and work product." (Id., at 4-5).

(6) "See above response to RFP #1 which would include anything sought in this request. [Plaintiff] is referred to the Exhibits to the hearing which includes sales figures." (Id., at 5).

(7) "See the DSA. Any other such documents would be included in the Response to RFP 1." (Id., at 8).

(8) "Any such documents, other than those provided in response to RFP #1, would constitute work product or legal arguments not properly the subject of an RFP." (Id.).

Nowhere in these responses has Defendant objected to Plaintiff's requests. The closest Defendant comes is to say some of the requests are "burdensome" but Defendant

has failed to provide any *specific* basis for this assertion. Consequently, the claim, treated as an objection, is insufficient. FED. R. CIV. P. 34(b)(2)(B).

Defendant did not provide a privilege log with its responses (Doc. 38 at 5-6). The party asserting a privilege has the burden of establishing its application to each document. See Rep. of Ecuador v. Hinchee, 741 F.3d 1185, 1189 (11th Cir. 2013); United States v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991) ("The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential," citing In re Grand Jury Proceedings in Matter of Freeman, 708 F.2d 1571, 1575 (11th Cir.1983)); In re Grand Jury Subpoena, 831 F.2d 225, 227 (11th Cir. 1987) (held: "an attorney seeking to quash a subpoena must assert the attorney-client privilege on a document-by-document basis."). "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial preparation material, the party must: (i) expressly make the claim; (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A). Defendant's blanket assertion of attorney-client privilege and the work product doctrine is, alone, not enough to shield information from discovery. To the extent Defendant wishes to claim privilege, it must provide a detailed log, or the Court will deem the privilege waived.

The rules require Defendant to state whether responsive information is being withheld on the basis of a specific objection. Defendant has not complied with this requirement. If Defendant has responsive information, it must produce it. That Plaintiff may already be in possession of the information is irrelevant to Defendant's duty to

produce documents that are responsive, relevant and proportional to the needs of the case.

Now, Plaintiff's motion to compel requests for production 1-38 is **GRANTED**. Defendant shall produce all the requested information within 14 days from the rendition of this Order. If Defendant believes that any information covered by Plaintiff's requests is attorney-client privileged or protected by the work product doctrine it shall provide a detailed privilege log within 14 days or the privileges will be deemed waived.

Plaintiff also seeks to compel better answers to the following interrogatories:

> Interrogatory No. 2: Identify any and all representatives, agents, or employees of Motiva Enterprises, LLC with whom you have had communications regarding the Vineland Station. For each such communication, state the date of such communication, the names and telephone numbers of the participants in the communications, the means of the communication (i.e. whether in person, by phone, teleconference, text message, or other means) and the subject matter of such communication.
>
> Response: The universe of operational interaction concerning SOUTHEAST's 60 plus station wholesale relationship with Motiva Enterprises, LLC ("Motiva") makes it unduly burdensome if not impossible to answer this Interrogatory which is unlimited in time or scope. SOUTHEAST will respond as to all matters concerning the alleged termination, customer complaints, and Motiva's Notice and demand to debrand the Vineland Station. SOUTHEAST's primary contact at Motiva is Sean Howard, Shell Wholesale Territory Manager Florida, whose email is Howard, Sean <Sean.Howard@motiva.com>. SOUTHEAST has also had more limited contact with Brain Jones and Jerry Lebus. SOUTHEAST is unaware of his address other than Motiva's corporate address or in care of Motiva's legal department
>
> As to matters relevant to this dispute, SOUTHEAST refers LLB to the documents provided under its Responses to Production #1 for the names of Motiva personnel with whom it has had communications concerning LLB's Vineland Station.2 Those materials provide the communications and names, addresses and other identifying relevant information for each such person. No record was kept of phone calls or meetings, if any, concerning LLB's Vineland Station.

> LLB is also in possession of emails which LLB receives providing it with customer complaints from Motiva about its operations at the Vineland Station and SOUTHEAST is usually copied with those complaints and routinely copies and sends LLB additional copies of such complaints. SOUTHEAST will therefore not produce additional copies of those materials. as they are already in the possession of LLB. SOUTHEAST is not responding as to attorney client communications concerning LLB as such matters are privileged.
>
> SOUTHEAST does not believe LLB wishes to be informed of information it has already received directly from Motiva or about matters not relevant to the dispute between the parties such as routine maintenance matters.

Defendant's objection that this interrogatory is not limited in time is **SUSTAINED** and therefore, the motion to compel a more complete answer is **DENIED**.

> **Interrogatory No. 2**: State with particularity each and every reason for sending to LLB the notice dated May 8, 2018 purporting to remove the Vineland Station from the Shell network and debrand the Vineland Station (the "Notice"), including without limitation, any actions taken by LLB that you allege contributed to loss of the use of the Shell trademark at the Vineland Station.
>
> **Response**: SOUTHEAST notes that, while the letter Notice is dated May 8, 2018, it was delivered on May 9, 2018 and additional copies sent via email on May 9, 2018. SOUTHEAST objects to this compound interrogatory which asks for reasons for sending a notice (the first question) and then asks for any actions taken by LLB that contributed to the loss of use of the [S]hell trademark at the Vineland Station. SOUTHEAST will answer both questions as Interrogatory 2(A) and Interrogatory 2(B) and considers that such answers constitute two separate answers.
>
> **Response to Interrogatory 2(A)**: SOUTHEAST and LLB are parties to a Dealer Supply Agreement (the "DSA"). SOUTHEAST is also a party to a Wholesale Marketer Agreement with Motiva (See Exhibit 16-1). The DSA refers to SOUTHEAST's agreement with the Oil Company at § 3.
>
> LLB received, and continues to receive, Shell branded fuels under the DSA which fuels SOUTHEAST is permitted to supply under its WMA. LLB also receives notice from Motiva of its customers complaints and SOUTHEAST is copied on

those emails. SOUTHEAST routinely provides LLB with additional copies of those complaints and demands that LLB address those complaints.

On January 26, 2018, SOUTHEAST received a copy of a customer complaint, labeled with the subject of "Presidential Escalation Price Gouging Case 54752/SR#99011643", [sic] which stated that LLB's employees had falsely advised a customer that the prices at LLB's Vineland Station were set by Motiva (Shell) and not by LLB.

Five days later, by letter dated January 31, 2018 ("Motiva's Notice"), Motiva notified SOUTHEAST that Motiva demanded SOUTHEAST take steps to debrand the Vineland Station on or before May 10, 2018 which letter, under the MWA revoked approval of the Vineland Station as an authorized seller of Shell branded fuels. Motiva's Notice stated Motiva's reasons and place SOUTHEAST on notice that fail[ure] to comply "would result in the rightful termination of the WMA under Section 25."

On February 14, 2018, SOUTHEAST's Director of Business Development, Ryan Firth, (See Exhibit 15-2) notified LLB by email of the Motiva Notice (the "Firth 2-14-18 Email"). LLB has acknowledged it received that email at, 16 in its State Court Complaint on or about February 14, 2018. After the Firth 2-14-18 Email, SOUTHEAST undertook two separate courses of action:

First: SOUTHEAST discussed with LLB alternatives to the Shell brand including LLB's initial suggestion to consider the option of going unbranded and SOUTHEAST's attempting to obtain approval for another branded fuel. Initially SOUTHEAST was successful in obtaining permission from CITGO's local representative to rebrand the Vineland Station as a CITGO branded facility but that local approval was not finally approved (see Attachment B)[.] Those discussions continue to this date.

Secondly, SOUTHEAST undertook to persuade Motiva to rescind or modify its Motiva Notice to allow LLB to remain a Shell branded station.

When SOUTHEAST'S became aware that its efforts to persuade Motiva to rescind or modify the Motiva Notice were rejected, SOUTHEAST again reminded LLB of the Motiva Notice by its May 9, 2018 email and notice which was also sent by registered mail as well. LLB later changed its mind and refused to go unbranded and SOUTHEAST then

> continued its efforts to rebrand LLB's Vineland Station with another branded fuel.
>
> SOUTHEAST has now rescinded and cancelled any and all notices, emails or correspondence purporting to rebrand the Vineland Station (See Attachment A).
>
> **Response to Interrogatory 2(B)**: LLB has also adopted a high price/low volume sales strategy which places its Vineland Station as the most expensive fuel sales facility, to SOUTHEAST's knowledge, as the most expensive motor fuel sales facility in the Orlando area if not the entire State of Florida. LLB has a history of customer complaints related to its pricing and, in the words of those customers, price gouging.
>
> Many of those customers filed complaints with Motiva. Motiva received a Presidential Escalation level complaint alleging that LLB was misleading customers by informing them that Shell (i.e. Motiva) was setting the extremely high prices at the Vineland Station which it forwarded to SOUTHEAST on January 26, 2018, which was five days before the Motiva Notice. LLB has knowledge that no one can set sales prices at its facility except LLB. It is believed that Motiva, in part based on its decision to require debranding of the Vineland Station on that behavior.
>
> CITGI also received similar complaints from customers alleging such misrepresentations, that CITGO was setting the high prices, in just the short time frame that the Vineland Station was selling CITGO branded fuels. It is believed that CITGO, in part based its decision to require debranding of the Vineland Station on that behavior.
>
> It is believed that Valero's management also decided not to approve the Vineland Station based on the higher number of customers complaints including those alleging such misrepresentations.

Rule 33(a) limits parties to 25 interrogatories, inclusive of subparts. "Resolving questions of whether a subpart to an interrogatory is 'discrete' under Rule 33 such that it should be counted separately can be a difficult task" and "courts considering this question have applied various tests." Williams v. Taser Int'l, Inc., No. 106-cv-51-RWS, 2007 WL 1630875, at *2 (N.D. Ga. June 4, 2007). Under the related question test, "[i]f the subparts are subsumed and necessarily related to the primary question, then the subpart is not

'discrete' within the meaning of Rule 33(a)." Oliver v. City of Orlando, No. 6:06-cv-1971-Orl-31DAB, 2007 WL 3232227, at * 2 (M.D. Fla. Oct. 31, 2007) (citing Williams, 2007 WL 1630875, at * 2). Courts which employ the discrete information test look to see which interrogatory subparts seek discrete pieces of information and therefore, must be counted separately for purposes of Rule 33(a). (Williams, 2007 WL 1630875, at * 2) (citing Prochaska & Assocs. v. Merrill Lynch, Pierce, Fenner & Smith, 155 F.R.D. 189, 191 (D. Neb. 1993) ("if the interrogatories require discrete pieces of information, those interrogatories are to be counted as if the sub-parts were specifically itemized")).

The subparts contained in Interrogatory No. 2 necessarily relate to and are subsumed in the interrogatory. And, the subparts do not seek information that is so discrete as to constitute a separate interrogatory. Accordingly, Interrogatory No. 2 is deemed to be a single interrogatory. In all other respects, Plaintiff's motion to compel this interrogatory is **DENIED**.

> **Interrogatory No. 7**: Describe with particularity any and all communications between you, LLB, and Citgo Petroleum Corporation related to branding the Vineland Station under the Citgo brand, including without limitation any written, oral or in-person discussions, meetings, correspondence, or other communications. For each such communication, state the date of such communication, the names and telephone numbers of the participants in the communications, the means of the communication (i.e. whether in person, by phone, teleconference, text message, or other means) and the subject matter of such communication.
>
> **Response**: There was no such three-party way communication as described in this Interrogatory.
>
> SOUTHEAST telephonically requested and coordinated CITGO's consideration of branding the Vineland Station as a facility authorized to sell CITGO branded fuels. The CITGO local representative, Nick Rodriguez, (IVRODRJ.J@cilgo.com. (404) 626-6094) stated it had been approved, subject to receiving written documents. No written records were kept of those phone calls but they occurred during the same time

frame in May through June 2018 as shown by the documents provided in response to RFP # 1 # 14 and # 15.

The Vineland Station was de-branded by LLB and the Shell branding were covered or removed. Soon thereafter, SOUTHEAST received notice from CITGO's representative that the Vineland Station would not be approved for sale of CITGO branded products. (See Attachment B to SOUTHEAST's Response to RFP)

**Interrogatory No. 8**: Describe with particularity any and all communications between you, LLB, and Valero Energy Corporation related to branding the Vineland Station under the Valero brand, including without limitation any written, oral or in-person discussions, meetings, correspondence, or other communications. For each such communication, state the date of such communication, the names and telephone numbers of the pai1icipants in the communications, the means of the communication (i.e. whether in person, by phone, teleconference, text message, or other means) and the subject matter of such communication.

**Response**: There was no such three-party way communication as described in this Interrogatory.

SOUTHEAST telephonically requested and coordinated Valera's consideration of branding the Vineland Station as a facility authorized to sell Valero branded fuels through another wholesaler from whom SOUTHEAST obtains branded and unbranded fuels.

The wholesaler is KARS Petro Distributors, and the person most involved was Chirayu Patel, Operations/Brand Manager, 380 Commerce Parkway, Rockledge, FL, 32955 (Phone: 321-690-0807). Kevin Johnson was KARS's representative at Valero (Phone & Address unknown; Kevin.Johnson@valcro.com)[.]

The Valero local representative visited the Vineland Station and approved it. Valero issued site numbers and approvals and actually shipped rebranding materials to the Vineland Station. Valero then notified SOUTHEAST that its initial approvals were withdrawn but no reason has yet been obtained for that refusal to complete the process although efforts are underway to obtain details of the change in position.

No written records were kept of those phone calls but they occurred during the same time frame in mid to late July -

>   August 2018 as shown by the documents provided in
>   response to RFP #1 and #17.

(Doc. 38-3). At this stage in the litigation, Defendant's answers to these interrogatories are sufficient and therefore, Plaintiff's motion to compel better answers is **DENIED**.

Each party having prevailed in part on the motion, the Court finds that an award of legal expenses to either party pursuant to Federal Rule of Civil Procedure 37(a)(5) would be unjust.

**DONE** and **ORDERED** in Orlando, Florida on April 12, 2019.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record