UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LLB CONVENIENCE & GAS, INC., a
Florida corporation,

      Plaintiff,

                                      **CASE NO.:  6:18-cv-914-Orl-40EJK**

vs.

SOUTHEAST PETRO DISTRIBUTORS,
INC.,

      Defendant.
_____/

## MOTION FOR LEAVE TO INTERVENE PURSUANT TO RULE 24, FEDERAL RULES OF CIVIL PROCEDURE, BY SHELL TRADEMARK MANAGEMENT INC. AND MOTIVA ENTERPRISES LLC

      Intervenors, Shell Trademark Management Inc. (hereafter "STMI") and Motiva Enterprises LLC (hereafter, "Motiva") (collectively referred to as "Intervenors") by and through their undersigned counsel and pursuant to Rule 24, Fed.R.Civ.P., respectfully move this Court for leave to intervene and be heard in this action.  In support of this motion, Intervenors would show the Court the following:

      The instant action was filed by the Plaintiff, LLB Convenience & Gas, Inc. ("LLB") on June 11, 2018, (Doc. 1) in response to the Defendant's, Southeast Petro Distributors, Inc., ("Southeast") notice to LLB of its violation of their fuel distribution agreement ("DSA"), and cancellation of that agreement related to LLB's 8788 Vineland Avenue, Orlando, FL 32821 gasoline station ("the Vineland Station").  LLB sought both injunctive and legal relief in its Complaint. (Doc. 1).  After the case was filed, LLB was

successful in first obtaining a temporary restraining order against Southeast (Doc. 10), and then was awarded a Preliminary Injunction (Doc. 17) against Southeast, thereby preventing the cancellation of the DSA.  These rulings have allowed a *status quo* result to LLB; meaning, that no change in the way LLB conducts its gas station business, and the prices it charges for gas, can take place while the Preliminary Injunction remains in force. Stated another way, LLB has encountered no financial losses as a result of Southeast's attempt to stop LLB from being an authorized retailer of Shell branded gas, and rebrand LLB with a different make of petroleum products.

The Intervenors have substantial business interests at stake in the property and transactions that are involved in the underlying suit. These interests authorize the Intervenors a recognized right to this intervention.  STMI  is a Delaware corporation with its principal place of business in Houston, Texas, and holds valid licenses to various "Shell" trademarks and tradenames that LLB is allowed to display at the Vineland station.   Shell is the recognized brand of gasoline and other petroleum products with which the motoring public is irrefutably familiar.  When a consumer has an issue with the purchase of fuel at a Shell-branded station, and wishes to voice a complaint, it is STMI or an affiliate that is the recipient of those complaints.  Motiva is a licensee for Shell brands of gasoline in the eastern United States, and has a contract with Southeast to supply it with refined Shell brand petroleum that Southeast in turn sells to retailers, such as LLB. (*See* trademarks and contracts attached to proposed Intervenors' Complaint, which is supplied herewith as composite **Exhibit 1**).  Disposition of the underlying suit between LLB and Southeast without the Intervenors' participation may adversely impair the

Intervenors' ability to enforce their legal rights.  It is STMI's right to protect its trademark, tradenames and the Shell brand generally.  Likewise, it is Motiva's right to seek relief from this Court from LLB's interference with Motiva's contractual relationship with Southeast.  The Intervenors' interests are not adequately protected by the existing parties in the underlying litigation and the Intervenors' interests do not fully align with the interests represented by the respective parties in this suit.

The Intervenors also satisfy the requirements for permissive intervention because their claims involve questions of fact and law that are in common with the claims and facts at issue in the main action.

Finally, this Motion is timely in that the full disposition of the underlying action in the trial court has not taken place.  Even if the underlying action were to be continued for a brief period of time to allow the Intervenors to meaningfully participate in the case, it would represent the first and only occasion that the trial setting has been moved. More importantly, no prejudice befalls either LLB or Southeast under a brief extension of time, given the Preliminary Injunction currently in place that allows LLB to continue to operate its business in the unusual manner it has chosen.  A Memorandum of Law supporting the validity of this request follows.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

### The Underlying Litigation

This Court is well acquainted with the facts of the underlying litigation, having just recited them in great detail in its thorough Order denying LLB's Motion for Summary Judgment (Doc. 75).  They will not be repeated here.

## Legal Support for this Motion

Rule 24, Fed.R.Civ.P., says this:

(a) **Intervention of Right**.  On timely motion, the court must permit anyone to
intervene who:
…
(2) claims an interest relating to the property or transaction that is the subject
of the action, and is so situated that disposing of the action may as a practical
matter impair or impede the movant's ability to protect its interest, unless the
existing parties adequately represent that interest.

(b) **Permissive Intervention**.

(1) In General.   On timely motion, the court may permit anyone to intervene
who:
…
(B) has a claim or defense that shares with the main action a common
question of law or fact.

The rule also instructs the court to consider whether the intervention will unduly delay or

prejudice the adjudication of the original parties' rights.  Further, the motion must be

accompanied by a pleading that sets out the claim for which intervention is sought.   That

pleading – the proposed Intervenors' Complaint – is attached hereto as Exhibit 1.  The

Intervenors satisfy all requirements of the rule, and this Court, in exercising its discretion,

should allow the intervention.

Addressing the requirements of rule 24(a)(2) first, it is clear that the Intervenors

have interests in the property or transaction that is the subject of the action.  There can be

no dispute that the owner and holder of a valid trademark or tradename should be allowed

to intervene in a matter where, from the viewpoint of the mark's owner, it is being used

illegally and without permission.  The same is true of the brand's owner, and its licensee,

where the licensee is in privity of contract with supplier of the branded gasoline.  Any

ruling in LLB's favor on its claims against Southeast may have a *stare decisis* and detrimental effect on these legitimate interests of the Intervenors, such that intervention should be allowed.  *See, e.g., Stone vs. First Union Corp.*, 371 F. 3d 1305 (11th Cir. 2004); *Chiles vs. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989).

While there is a legal presumption of adequate representation where an existing party seeks the same objective as the intervenor, *Clark vs. Putnam County*, 168 F. 3d. 458 (11th Cir. 1999), this presumption is not difficult to overcome where the intervenor sets forth evidence to the contrary.   The Intervenors here raise claims for trademark infringement under the Lanham Act, 15 U.S. §1051 *et. seq*., as well as trademark dilution and tarnishment claims under the Federal Trademark Dilution Revision Act of 2006 ("FTDA"), 15 U.S. §1125 *et seq*., and Florida's anti-dilution law § 495.151 of the Florida Statutes.  Additionally, a claim for the tortious interference by LLB of the contract existing between Motiva and Southeast is included in the Intervenors' Complaint.  While *similar* to the *nature* of the overall defense raised by Southeast in response to LLB's complaint, the claims sought to be advanced by the Intervenors are not adequately represented by Southeast, and Southeast would have no reason or standing to pursue them.  As the Eleventh Circuit has held, similar but not identical interests between a proposed intervenor and the existing parties weigh in favor of the Court allowing intervention, not rejecting it.  *Chiles*, 865 F.2d at 1214-15.

Turning now to the question of the timing of this Motion, the Intervenors acknowledge that this case has been pending since June of 2018, and that it is set for trial in February of 2020.   The Intervenors further acknowledge that allowing them to

intervene at this juncture may require a modest postponement of the trial setting.  Good cause exists for such a continuance of the trial, however, when all the circumstances between the litigants and these Intervenors are considered.  This is exactly what is required when viewing a Rule 24 motion against the backdrop of the current status of the case the Intervenors seek to join.  The Eleventh Circuit has instructed district courts to look at these factors when determining whether a motion to intervene is timely:

> (1)    the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extend of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely.

*Georgia vs. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002) (quoting *Chiles*, 865 F. 2d at 1213).

While a case's progression on the Court's docket is extremely important, it has been held that timeliness of a motion to intervene is to be "determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973).   And the Eleventh Circuit has also noted that the timeliness requirement "must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice.  *U.S. Army Corps of Engineers*, 302, F. 3d at 1259 (citing *McDonald vs. E.J. Lavino Co*., 430 F.2d 1065, 1074 (5th Cir. 1970).

The Court's preliminary injunction (Doc. 17) has allowed LLB to continue to operate its business in the manner it has chosen.  The preliminary injunction also requires Southeast to continue to sell and supply LLB with Shell branded gasoline.  The only

entities prejudicially affected by the *status quo* the preliminary injunction mandates are the Intervenors, not the parties to the existing case.  A continuance of the trial date to allow Intervention does no financial or economic harm to the present litigants at all.  It is only the Intervenors whose rights are being adversely affected on a daily basis.  When all of these factors are considered, intervention either as a matter of right or permitted by the Court's discretion is indeed called for.

<u>Conclusion</u>

As this Court now knows, LLB operates its gas station under a business model that charges exorbitant prices to unsuspecting customers needing fuel for lengthy trips from a nearby shopping center to various parts of Florida.  Hundreds of complaints about LLB's practices have been made to Shell affiliates, who have made Motiva aware of the complaints.  In turn, Motiva has informed Southeast of the complaints as well. Pursuant to the Wholesale Marketer Agreement and the DSA, Southeast is responsible for insuring that customer complaints against retailers such as LLB were timely responded and rectified.  Numerous objectionable reviews can be found throughout various travel websites on the internet (*See* references in Intervenors' Complaint, attached hereto as **Exhibit 1.**)  The Intervenors, not LLB or Southeast, bear the brunt of these complaints because of the name of the station operates under, which is clearly the familiar yellow, red and long respected "Shell" sign.  The consuming public knows little, if anything, about "LLB Gas & Convenience, Inc." The consuming public is left to presume that Shell is dictating the unconscionable prices LLB is charging, which is indisputably not the case.

Motiva, and in turn, Southeast, has attempted to rectify the issue under the terms of the DSA between Southeast and LLB, and succeeded in requiring LLB to remove the Shell banners and signs, but only for a brief period of time.  (*See* Doc. 75 at p. 9 of 25). But once the replacement brand (Citgo) revoked its approval to brand the Vineland Station, LLB unilaterally reinstalled the Shell signs and banners and continued illegally selling Shell branded fuel supplied by Southeast. *Id.*   This Court's temporary restraining order was issued within days thereafter, and LLB continues to display the Shell Oil banners and signs and is continuing to unlawfully infringe upon, and tarnish Shell's mark.  Because its mark is not being adequately protected in the underlying case, and its ability to do so may be impaired hereafter, the Intervenors request the opportunity to appear and lay out their claims of infringement, tarnishment, and tortious interference in the contractual relationship existing between Motiva and Southeast.

## Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), counsel for the Intervenors has conferred with counsel for both LLB and Southeast about the relief sought in this motion.  Southeast neither instigated nor requested that Intervenors seek to intervene in the underlying lawsuit; however, counsel for Southeast has no objection to the Intervenors' request to intervene.  Counsel for LLB objects to this request.

WHEREFORE, PREMISES CONSIDERED, the Intervenors respectfully request that they be granted leave to intervene and be heard in the instant action.

Dated: January 16, 2020                 Respectfully submitted,

                                        */s/ Francis M. McDonald, Jr.*
                                        FRANCIS M. McDONALD, JR., ESQ.
                                        Florida Bar No. 0327093
                                        SARAH A. LONG, ESQ.
                                        Florida Bar No. 0080543
                                        TIFFANY M. WARD, ESQ.
                                        Florida Bar No. 1019017
                                        McDONALD TOOLE WIGGINS, P.A.
                                        111 N. Magnolia Avenue, Suite 1200
                                        Orlando, FL 32801
                                        Telephone: (407) 246-1800
                                        Facsimile:  (407) 246-1895
                                        fmcdonald@mtwlegal.com
                                        slong@mtwlegal.com
                                        tward@mtwlegal.com
                                        e.service@mtwlegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 16, 2020, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

Kevin A. Reck, Esq., Virginia R. Beeson, Esq., Foley & Lardner, 111 N. Orange Ave, Suite 1800, Orlando, FL 32801; kreck@foley.com; vbeeson@foley.com; bshelly@foley.com, (*Attorneys for Plaintiff*)

Robert MacFarlane Mayer, Esq., Robert M. Mayer& Associates, 3132 Center Street, Miami, FL 33133; Rmmayer@miamicounsel.com (*Attorneys for Defendant, Southeast Petro Distributors, Inc.*)

                                        */s/ Francis M. McDonald, Jr.*
                                        FRANCIS M. McDONALD, JR., ESQ.
                                        Florida Bar No. 0327093

SARAH A. LONG, ESQ.
Florida Bar No. 0080543
TIFFANY M. WARD, ESQ.
Florida Bar No. 1019017
MᶜDONALD TOOLE WIGGINS, P.A.
111 N. Magnolia Avenue, Suite 1200
Orlando, FL 32801
Telephone: (407) 246-1800
Facsimile:  (407) 246-1895
fmcdonald@mtwlegal.com;
slong@mtwlegal.com;
tward@mtwlegal.com;
e.service@mtwlegal.com; S

*Attorneys for Defendants, Shell Trademark
Management Inc. and Motiva Enterprises
LLC*